# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Clairmont*, 2011 IL App (2d) 100924

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. KEVIN K. CLAIRMONT, Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. INOCENCIO FERNANDEZ, Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2-10-0924, 2-10-0925 cons. |
| Filed | November 29, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In DUI prosecutions, the trial court properly granted defendants' motions *in limine* barring the admission of the results of their breath tests based on the improper certification of the breath test machines. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 09-CF-1438, 09-CF-2228; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed and remanded. |

| Counsel on Appeal | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, Lawrence M. Bauer, Gregory L. Slovacek, and Jay Paul Hoffman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
|---|---|
| | Donald J. Ramsell, of Ramsell & Associates, LLC, of Wheaton, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Presiding Justice Jorgensen concurred in the judgment and opinion. Justice Bowman dissented, with opinion. |

**OPINION**

¶ 1      The State appeals the trial court's grant of motions *in limine* made by defendants, Kevin K. Clairmont and Inocencio Fernandez, barring admission of the results of defendants' breath tests at trial. The State filed a certificate of substantial impairment in each case, pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006). This court consolidated the two cases on appeal on the State's motion. The sole issue raised by the State is whether, based on the alleged improper certification of the breath test machines, the trial court properly barred the results of the breath tests. We affirm and remand.[1]

¶ 2                                    I. BACKGROUND

¶ 3      We recite only the facts necessary for these appeals. The following facts are not in dispute. In June 2009 Clairmont was charged with numerous offenses, including aggravated driving under the influence of alcohol while his driving privileges were revoked or suspended (625 ILCS 5/11-501(c)(1) (West 2008)) and driving under the influence of alcohol (625 ILCS 5/11-501(a)(1) (West 2008) ("the alcohol concentration in the person's blood or breath is 0.08")).[2] Clairmont submitted to a breath test when he was stopped by the police.

¶ 4      In September 2009 Fernandez was charged with numerous offenses, including four

---

[1]Other charges arising out of the two traffic stops are pending below awaiting the outcome of this appeal. The causes are remanded for disposition of those charges.

[2]Clairmont was also charged with driving while his license was suspended (625 ILCS 5/6-303(a) (West 2008)), operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2008)), and improper lane usage (625 ILCS 5/11-709 (West 2008)).

counts of aggravated driving under the influence of alcohol. Two of these counts alleged, in part, that the alcohol concentration in Fernandez's blood or breath was 0.08 in violation of section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2008)).[3] Fernandez submitted to a breath test at the time he was stopped by the police.

¶ 5 Both defendants filed motions *in limine* to bar the introduction at their trials of their breath test results. Their motions alleged that the breath test machines were not certified as accurate in accordance with section 1286.230 of title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 1286.230, amended at 33 Ill. Reg. 8529 (June 4, 2009)), because they were not checked and certified within 62 days, as required by the regulation.

¶ 6 The trial court heard argument on defendants' motions at the same time. During argument, the parties stipulated that the breath test machine used for Clairmont was checked and certified 60 days before he was tested and not again until 11 days after. Therefore, a total of 71 days passed between the two checks and certifications.

¶ 7 The parties also stipulated that the breath test machine used for Fernandez was checked and certified 3 days before he was tested and not again until 62 days after. Therefore, a total of 65 days passed between the two checks and certifications. The trial court granted both defendants' motions *in limine*. The State filed timely certificates of impairment and notices of appeal. These cases were consolidated on appeal.

¶ 8                                                  II. ANALYSIS

¶ 9 Initially, we note that Fernandez did not file an appellee's brief. However, the issue can be decided without a brief from Fernandez. Thus, we will decide the merits of the State's appeal in both cases. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 10 On appeal, the State contends that the trial court erred by granting defendants' motions *in limine* and barring the results of the breath tests from being introduced at trial. The State argues that the results of defendants' breath tests were admissible because the breath test machines were checked no more than 62 days prior to defendants' tests, pursuant to section 1286.200 of title 20 of the Administrative Code. See 20 Ill. Adm. Code 1286.200 (2011). The State argues that section 1286.200 is the only section addressing the timing of breath-test-machine checking that affects admissibility. Defendants argue that section 1286.230, requiring breath test machines to be checked "at least once every 62 days" to ensure accuracy, must also be complied with, together with section 1286.200. Defendants argue that the trial court did not err because the subject breath test machines had not been checked in a timely manner pursuant to section 1286.230; thus, defendants' test results were

---

[3]Fernandez was also charged with aggravated driving while his license was revoked (625 ILCS 5/6-303(a), (d-3) (West 2008)), two counts of improper lane usage (625 ILCS 5/11-709 (West 2008)), transportation of alcoholic liquor in a motor vehicle (625 ILCS 5/11-502(a) (West 2008)), three counts of endangering the life of a child (720 ILCS 5/12-21.6 (West 2008)), and failure to secure a child under the age of eight years in an appropriate child restraint system (625 ILCS 25/4 (West 2008)).

inadmissible. We agree with defendants.

¶ 11    In general, a trial court's decision to grant a motion *in limine* will not be disturbed on review absent an abuse of discretion. *People v. Morris*, 394 Ill. App. 3d 678, 680 (2009). However, in this case, the State's sole argument is that the trial court's application of section 1286.230 of title 20 of the Administrative Code was erroneous as a matter of law. Where, as here, the issue on appeal involves a question of law, our review is *de novo*. See *People v. Oliver*, 387 Ill. App. 3d 1162, 1167 (2009).

¶ 12    When a motorist files a motion *in limine* to bar breath test results, the State must establish a sufficient foundation for the admission of the evidence. *People v. Ebert*, 401 Ill. App. 3d 958, 960 (2010). To lay a proper foundation, the State must establish that the test was performed in accordance with section 11-501.2(a) of the Illinois Vehicle Code (625 ILCS 5/11-501.2(a) (West 2008)) and the regulations promulgated by the Illinois Department of State Police. *People v. Orth*, 124 Ill. 2d 326, 340 (1988).[4] Failure to comply with section 11-501.2(a) and the regulations renders the results of the test unreliable and, thus, inadmissible. *People v. Emrich*, 113 Ill. 2d 343, 350 (1986).

¶ 13    Section 1286.230 of title 20 of the Administrative Code provides in relevant part:

> "To ensure the continued *accuracy* of approved evidentiary instruments, a BAT or automated system shall perform accuracy checks.
>
> a) Checks shall be performed *at least once every 62 days*." (Emphases added.) 20 Ill. Adm. Code 1286.230 (2011).

¶ 14    In the cases at bar, the breath test machines were not checked in compliance with section 1286.230(a). It is undisputed that, regarding the breath test machine at issue in Clairmont's case, a total of 71 days passed between the two checks and certifications. Similarly, it is undisputed that, regarding the breath test machine at issue in Fernandez's case, a total of 65 days passed between the two checks and certifications. Thus, the tests were not conducted in conformity with the regulations promulgated by the Department of State Police, an agency of the State. Thus, the State has failed to satisfy its own minimum standards promulgated to ensure accuracy. The State, by its own regulations, has set the bar, and it was not met. The trial court was correct in determining that the tests were nonconforming and inadmissible. See 20 Ill. Adm. Code 1286.230 (2011); *Emrich*, 113 Ill. 2d at 350. Thus, the trial court properly granted defendants' motions *in limine*.

¶ 15    On appeal, the State argues that, pursuant to section 1286.200(d), the regulations require *only* that no more than 62 days pass since the last check of a breath test machine *prior* to a defendant's test. The State argues that the language contained in section 1286.230 regarding the performance of accuracy checks every 62 days "deals [only] with instructions as to how the accuracy tests are to be performed and not [with] admissibility." We disagree with the State because its argument ignores well-settled principles of statutory interpretation.

---

[4]Pursuant to Public Act 91-828 (Pub. Act 91-828, § 5 (eff. Jan. 1, 2001)), reference to the "Department of Public Health" was replaced by the "Department of State Police." See 625 ILCS 5/11-501.2(a) (West 2008).

¶ 16    Section 1286.200 provides in relevant part:

"The procedures contained in this Subpart are the only procedures for establishing the accuracy of breath testing instruments. A rebuttable presumption exists that an instrument was accurate at the particular time a subject test was performed when the following four conditions are met.

a) The instrument was approved under this Subpart at the time of the subject test.

b) The performance of the instrument was within the accuracy tolerance described in this Subpart according to the last accuracy check prior to the subject test.

c) No accuracy check has been performed subsequent to the subject test or the next accuracy check after the subject test was within the accuracy tolerance described in this Subpart.

d) Accuracy checks have been done in a timely manner, meaning not more than *62 days* have passed since the last accuracy check *prior* to the subject test." (Emphases added.) 20 Ill. Adm. Code 1286.200 (2011).

¶ 17    Administrative regulations have the force and effect of law, and the same rules of construction used in the construction of statutes apply when construing administrative regulations. *People v. Bonutti*, 212 Ill. 2d 182, 188 (2004). Therefore, the language of a regulation should be given its plain and ordinary meaning. *Arellano v. Department of Human Services*, 402 Ill. App. 3d 665, 673 (2010). Courts should avoid interpreting regulatory language that renders it superfluous. *Arellano*, 402 Ill. App. 3d at 675. In addition, courts must construe provisions in harmony when possible. *Mermelstein v. Rothner*, 349 Ill. App. 3d 800, 803 (2004).

¶ 18    In this case, the necessary requirements were met under section 1286.200, and therefore, there was a rebuttable presumption of accuracy. However, we cannot ignore section 1286.230 because to do so would render it superfluous. Section 1286.230(d) requires that, to ensure the "continued accuracy" of approved evidentiary instruments, accuracy checks "shall be performed at least once every 62 days." Section 1286.230 reflects the need not only to set a standard for the presumption of a machine's accuracy when a test was administered, but to ensure that the machine continued to be accurate. To accomplish this, the section requires that accuracy checks be performed "at least once every 62 days." If checks could be performed only as required by section 1286.200, a defendant could be convicted with evidence from an instrument that had not been tested for 62 days. Because the two sections can be read in harmony (see *Mermelstein*, 349 Ill. App. 3d at 803), and the State's interpretation would render section 1286.230(a) superfluous, such evidentiary instruments must be tested for accuracy once every 62 days.

¶ 19    Further, nothing in the plain and ordinary language of the regulations at issue supports the State's interpretation that section 1286.230 deals only with instructions on how to perform tests. Nothing in section 1286.230 indicates that it applies only to instructions on how to perform tests. Section 1286.230 provides, "[t]o ensure the continued accuracy" of breath test machines, "[c]hecks *shall* be performed at least once every 62 days." (Emphasis added.) 20 Ill. Adm. Code 1286.230 (2011). The word "shall" in an enactment ordinarily means that the provision is mandatory. See *Emrich*, 113 Ill. 2d at 350. In *Emrich* the supreme

-5-

court interpreted the word "shall," which was contained in a former version of section 11-501.2 of the Illinois Vehicle Code, as mandatory and not directive or permissive. *Emrich*, 113 Ill. 2d at 350. Thus, the plain and ordinary language of section 1286.230 indicates that a breath test machine must be checked at least once every 62 days or it will not be considered accurate.

¶ 20    In addition, we must view these regulations as a whole and give effect and meaning to every section and every phrase, and we must avoid rendering any word, phrase, or clause superfluous. See *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). The State's interpretation renders section 1286.230 meaningless and thus lacks merit. Further, we must construe provisions in harmony when possible. See *Mermelstein*, 349 Ill. App. 3d at 803. Section 1286.200(d) provides that "a timely manner" means that "not more than *62 days* have passed since the last accuracy check *prior* to the subject test." (Emphasis added.) 20 Ill. Adm. Code 1286.200(d) (2011). However, it does not provide that this is the only meaning of "timely manner." Thus, when read in harmony with section 1286.200(d), section 1286.230(a) further defines "timely manner." This interpretation also prevents section 1286.230(a) from being rendered meaningless. Accordingly, we reject the State's interpretation of section 1286.230(a) as having no effect on admissibility.

¶ 21    Without citation to authority, the dissent would admit the results of the breath tests in violation of section 1286.230(a) and shift the burden to defendants to rebut the presumption of their accuracy. *Infra* ¶ 33. The dissent ignores our supreme court's holdings in *People v. Hamilton*, 118 Ill. 2d 153 (1987), and *Emrich*, 113 Ill. 2d 343. In *Hamilton*, the supreme court held that noncompliance with regulations invalidates test results and renders them inadmissible. *Hamilton*, 118 Ill. 2d at 159. *Emrich* held that failure to comply with section 11-501.2 and the regulations promulgated thereunder renders the results of chemical tests inadmissible in a DUI prosecution. *Emrich*, 113 Ill. 2d at 351. Thus, once a defendant establishes noncompliance, it is not the defendant's burden to prove anything else; test results are inadmissable, absent a successful argument that there was substantial compliance, which was not raised here. Further, *Ebert*, 401 Ill. App. 3d 958, suggests that courts should accept the expertise of the Department of State Police for formulating the standards for breath testing. *Ebert*, 401 Ill. App. 3d at 965.

> "The standards exist, not for their own sakes, but in service of the truth-seeking function, which they promote by ensuring that blood, breath, and urine tests are conducted in a manner that produces reliable results. *** We are therefore reluctant to relax the standards when doing so would require inquiry into the scientific basis for a particular standard." *Ebert*, 401 Ill. App. 3d at 965.

The dissent muddies the waters rather than clarifying the parameters. It would allow judges to second-guess the standard established by the regulation, by considering testimony regarding scientific matters that are within the purview of the Department of State Police. See 625 ILCS 5/11-501.2(a)(1) (West 2010). Thus, the dissent's proposal is unsupportable.

¶ 22    The State also supports its interpretation by noting that section 1286.200 was amended in 2007. Prior to 2007, section 1286.200(d) provided:

> "(d) Accuracy checks have been done in a timely manner meaning:

> 1) Not more than 62 days have passed since the last accuracy check prior to the subject test; or
>
> 2) The period of time between the last accuracy check prior to the next subject test, is not more than 62 days."[5] 20 Ill. Adm. Code 1286.200(d), amended at 28 Ill. Reg. 10017 (eff. June 30, 2004).

¶ 23    The State notes that the second requirement of the older version was removed in 2007. However, the State fails to explain why, while revisiting the subject, the Department of State Police failed to amend section 1286.230(a). By amending section 1286.200(d) but leaving section 1286.230(a) unchanged, we presume that the Department of State Police did not intend to contradict itself, and we believe that our interpretation of those sections "is not only reasonable but construes those sections *in pari materia*." *In re Jaime P.*, 223 Ill. 2d 526, 538 (2006).

¶ 24    Next, without citation to authority, the State argues that its interpretation is the most consistent with the legislative purpose of protecting citizens "by keeping impaired drivers off of Illinois roadways." We recognize that the purpose of the drunk-driving statutory scheme (article 5 of the Illinois Vehicle Code (625 ILCS 5/11-500 *et seq.* (West 2008)) is to curb the incidence of drunk driving on Illinois highways. See *People v. Gustafson*, 194 Ill. App. 3d 910, 917 (1990). However, the State's singular focus on curbing the incidence of drunk driving should be balanced with the purpose of section 1286.230(a), which is to ensure that only accurate breath test results are admitted into evidence against a defendant. See *Bonutti*, 212 Ill. 2d at 190. The State is essentially arguing that the goal of protecting the public is so important that the State is justified in disregarding its own regulations in order to achieve its goal. However, our supreme court has rejected this approach.

¶ 25    In *Bonutti*, the supreme court affirmed the suppression of the defendant's breath test results because there was evidence that the defendant had acid reflux within 20 minutes prior to the test, which may have rendered the test unreliable pursuant to section 1286.310(a). *Bonutti*, 212 Ill. 2d at 190-92. The trial court believed that, even though the officer diligently watched the defendant, the test results "may have been compromised." *Bonutti*, 212 Ill. 2d at 190-91. The supreme court explained:

> "As the appellate court below correctly noted, the purpose of section 1286.310(a) is to ensure that only accurate breath-alcohol tests are admitted into evidence against a criminal defendant. [Citation.] The State's reading of section 1286.310(a) wholly undermines this purpose by virtually ensuring that *inaccurate* test results will be admitted. In this case, for example, the trial court believed that Officer Largen both observed defendant continuously for 20 minutes and failed to notice any vomiting or regurgitation during that period. But the trial court also believed that defendant has long suffered from GERD, that GERD results in silent, unobservable regurgitation, and that defendant experienced a reflux episode during the 20-minute observation period. Thus, the trial court believed that, despite Officer Largen's diligence, the results of defendant's

---

[5]Section 1286.200(d) was amended pursuant to 31 Ill. Reg. 7305 (eff. May 1, 2007) and was subsequently amended pursuant to 33 Ill. Reg. 8529 (eff. June 4, 2009) to its current form.

breath-alcohol test may have been compromised by an episode of reflux. If the State had had its way, the trial court nevertheless would have been compelled to admit those results, treat them as reliable, and perhaps even use them as the basis for a criminal conviction. The problem, then, is that, while the State's reading of section 1286.310(a) ensures that breath-alcohol tests are *admissible*, it does nothing to ensure that those results, once admitted, are *reliable*. And reliability, after all, is the paramount concern." (Emphases in original.) *Bonutti*, 212 Ill. 2d at 190-91.

Noncompliance with the regulation "has the potential to create criminals out of people who are not." *Bonutti*, 212 Ill. 2d at 192. Because reliability, and not convictions, is the paramount concern in this case as in all cases (see *Bonutti*, 212 Ill. 2d at 191), section 1286.230(a), as promulgated by the Department of State Police, must be adhered to in order to ensure reliability. The Department of State Police has mandated checks at least once every 62 days to ensure accuracy. Of course, this regulation has the force and effect of law (*Bonutti*, 212 Ill. 2d at 188); as such, it "is not a 'technicality' " (*Bonutti*, 212 Ill. 2d at 192), and it is not a contingency that this court will countenance.

¶ 26 The State cites *People v. Rigsby*, 383 Ill. App. 3d 818 (2008), to support its argument that section 1286.200 is the only section that governs admissibility of the results of breath tests and when breath test machines are tested. However, *Rigsby* does not support the State's argument. In *Rigsby*, the appellate court held that the defendant waived his argument that his breath test result was inadmissible pursuant to a violation of section 1286.200, because he failed to raise the issue in the trial court. *Rigsby*, 383 Ill. App. 3d at 823. Nothing in *Rigsby* indicates that section 1286.200 is the only regulation that addresses the admissibility of the results of breath tests and when breath test machines are tested. Further, *Rigsby* does not mention section 1286.230. Thus, *Rigsby* does not support the State's interpretation.

¶ 27 The State also cites *People v. Carpenter*, 385 Ill. App. 3d 156 (2008), for the proposition that the regulations should be construed in a manner consistent with the real world activity that the use of breath test machines was designed to regulate. *Carpenter*, 385 Ill. App. 3d at 162 (citing *People v. Hanna*, 207 Ill. 2d 486, 503 (2003)). However, as the State concedes, *Carpenter* involved a different regulation than those at issue here. *Carpenter*, 385 Ill. App. 3d at 160. *Carpenter* is also distinguishable from this case because, in *Carpenter*, the regulation at issue was followed. *Carpenter*, 385 Ill. App. 3d at 162. In *Carpenter*, this court held that a list of temporarily approved new breath test devices was "available to the public" within the meaning of section 1286.210(c) even though it was not posted on the Department of State Police website. *Carpenter*, 385 Ill. App. 3d at 161. We reasoned that it was available to the public because anyone could obtain it from the Department. *Carpenter*, 385 Ill. App. 3d at 163. In this case, the State stipulated that section 1286.230 was not followed. The only issue here, unlike in *Carpenter*, is whether the violations of section 1286.230 rendered the test results inadmissible. Thus, *Carpenter* is not applicable to the cases at bar.

¶ 28 Finally, we note that courts have held that a lack of strict compliance with certain regulations does not always render tests results inadmissable. See, *e.g.*, *People v. Bishop*, 354 Ill. App. 3d 549, 556 (2004). In such a case, the State may rebut the presumption of unreliability with proof that a test result is valid despite the lack of strict compliance with the regulation. See *Bishop*, 354 Ill. App. 3d at 556. Substantial compliance will be found where

the deviation from the regulation neither affects the reliability of the test nor prejudices the defendant. *Bishop*, 354 Ill. App. 3d at 556. However, in the cases before us, the State expressly stated at the hearing on the motions *in limine* that it was not arguing substantial compliance; rather, it argued only that failure to comply with section 1286.230 did not affect admissibility. The two propositions differ in that the former entails discretion whereas the latter does not. Consistent therewith, the State presented no evidence at the hearing to establish admissibility or reliability despite noncompliance.

¶ 29                                    III. CONCLUSION

¶ 30        The judgments of the circuit court of Du Page County are affirmed, and the causes are remanded.


¶ 31        Affirmed and remanded.


¶ 32        JUSTICE BOWMAN, dissenting:

¶ 33        I respectfully dissent. Section 1286.200 creates a rebuttable presumption that a breath testing machine was accurate if the following four conditions are met: (1) the instrument was approved at the time of the test; (2) the instrument's performance was within a prescribed accuracy tolerance "according to the last accuracy check *prior to* the subject test"; (3) "No accuracy check has been performed subsequent to the subject test or the next accuracy check after the subject test was within the accuracy tolerance described in this Subpart"; and (4) "Accuracy checks have been done in a timely manner, meaning not more than 62 days have passed since the last accuracy check *prior to* the subject test." (Emphases added.) 20 Ill. Adm. Code 1286.200 (2011). It is undisputed that all of these conditions, which emphasize an accuracy check prior to the subject test and do not require a subsequent accuracy check, were met. Thus, here there was a rebuttable presumption that the breath testing machine was accurate.

¶ 34        The majority relies on section 1286.230 to impose an additional requirement for the rebuttable presumption. That section states that "[t]o ensure the continued accuracy of approved evidentiary instruments, *** [c]hecks shall be performed at least once every 62 days." 20 Ill. Adm. Code 1286.230 (2011). However, nothing in this section requires that such a check be performed to create the rebuttable presumption that a breath testing machine was accurate. To the contrary, as the State points out, a prior version of section 1286.200 stated that accuracy checks would be considered to have been done in a timely manner if either not more than 62 days had passed since the last accuracy check before the subject test *or* the "period of time between the last accuracy check prior to the next subject test, and the accuracy check after the subject test, is not more than 62 days." 20 Ill. Adm. Code 1286.200, amended at 28 Ill. Reg. 10017 (eff. June 30, 2004). We presume that the legislature amends a statute to effect a change in the law as it previously existed (*People v. Craig*, 403 Ill. App. 3d 762, 768 (2010)), and the same principle applies to regulations (*Arellano v. Department of Human Services*, 402 Ill. App. 3d 665, 673 (2010) (we interpret administrative regulations in the same manner as statutes)). Thus, by amending section 1286.200, the Department of

-9-

State Police specifically decided to eliminate the ability to defeat the rebuttable presumption of machine accuracy when a machine was not tested within 62 days after the subject test.

¶ 35      While section 1286.200 clearly enumerates the conditions required for the State to create a rebuttable presumption of accuracy, section 1286.230 does not provide that the failure to check the machine after 62 days *automatically* rebuts the presumption of accuracy. Such an interpretation would be contrary to the Department of State Police's decision to no longer allow a lack of such a future test to prevent the creation of the rebuttable presumption in section 1286.200. This does not mean that the 62-day requirement in section 1286.230 is without meaning or effect. Rather, the trial court may consider evidence that the machine was not tested within 62 days, along with any other relevant evidence submitted by the defense, in its determination of whether a defendant has presented sufficient evidence to rebut the presumption of machine accuracy. Here, the trial court did not conduct such a balancing test but rather ruled that noncompliance with section 1286.230 defeated the presumption in section 1286.200 as a matter of law. Accordingly, I would reverse and remand.